FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

FEB 24 2010

DAVID J. MALAND, CLERK
BY
DEPUTY_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> *ex rel.* DAVID R. VAVRA and § <br> JERRY HYATT, § <br> Plaintiffs, § <br> § <br> VS. § <br> § <br> KELLOGG BROWN & ROOT, INC., § <br> BOB BENNETT, WESCO § <br> INTERNATIONAL, INC., PHIL ELDERS § <br> AND PANALPINA, INC., § <br> Defendants, § | CIVIL ACTION NO. 1:04-CV-00042 <br><br><br><br><br><br><br><br><br>**FILED UNDER SEAL** |

## SECOND AMENDED ORIGINAL COMPLAINT

Plaintiffs, David R. Vavra and Jerry Hyatt, on behalf of the United States of America, through their counsel, for their second amended original complaint, allege:

### I. AMENDMENT

The purpose of the amended complaint is to prepare the Complaint for unsealing and public disclosure. No new allegations have been made. Investigation has led to the removal of causes of action and deletion of identified and John Doe Defendants.

### II. INTRODUCTION

1.   This is a civil action to recover damages and civil penalties on behalf of the United States of America arising from false statements including false certifications, false invoicing, kickbacks and other violations which Defendants caused to be made to the various branches of the United States Military under the Department of Defense. The false statements were for the purpose of obtaining payment or approval for payment from the United States, in violation of the False Claims Act, 31 U.S.C. §§3729-3733, as amended ("FCA"), the Anti-Kickback Act, 41 U.S.C. §§ 51-58, and

common law. These violations also include price fixing and violations of United States antitrust statutes.

### III. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 31 U.S.C. §3732 and 28 U.S.C. §1345, since one or more of the Defendants transact business in this District.

3. Venue is proper in the Eastern District of Texas under 31 U.S.C. §3732 and 28 U.S.C. §1391(b) and (c) because one or more of the Defendants transact business in this District.

### IV. PARTIES

#### RELATORS

4. Relators are individuals who are citizens of the United States, suing on behalf of Department of Defense, which is an agency and instrumentality of the United States and its operations and obligations are paid by funds from the United States Treasury.

#### DEFENDANTS

5. Bob Bennett, ("Bennett"), is an individual whose current address is unknown.

6. Kellogg, Brown & Root, Inc., ("KBR"), is a foreign business corporation who may be served through its registered agent, C.T. Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

7. Wesco International, Inc., ("Wesco"), is a national corporation which has a regional office located in Houston, Texas, and may be served through its Regional Operations Manager, Tim Boyd, at 10850 Richmond Avenue, Suite 290, Houston, Harris County, Texas.

8. Defendant Phil Elders, ("Elders"), is an individual whose last known address was in Sugarland, Texas.

9. Defendant Panalpina, Inc., ("Panalpina"), is a foreign business corporation who may be served through its registered agent, Corporation Service Company dba CSC Lawyers Incorporating Service Company at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

10. This True Party in Interest action is filed on behalf of the United States which is not yet a party and has not chosen to intervene. As such, it is necessary to serve the complaint on the appropriate representatives of the United States.

11. The Secretary of Defense and United States Attorney for the Eastern District of Texas have previously been served and will receive a copy of this Second Amended Complaint through its attorney of record, Michael W. Lockhart.

## V. BACKGROUND

12. Beginning with the conflict in Bosnia and continuing through all subsequent foreign conflicts, Kosovo, Afghanistan and Iraq, the United States military has contracted with private entities for transportation of equipment and supplies to support operations abroad. The use of civilian contractors to provide support services to the United States military was under a series of contracts called Logistics Civil Augmentation Program ("LOGCAP"). KBR received the initial LOGCAP Task Order contract for the Bosnian conflict. This contractual arrangement between the Pentagon and KBR was extended to subsequent foreign conflicts, LOGCAP II in Kosovo, and including the war on terrorism in Afghanistan and Iraq, LOGCAP III. KBR was awarded these contracts because of its extensive foreign experience and unique ability to implement the military's complex contingency plans on extremely short notice.

13. The LOGCAP contracts require that, among other terms, KBR deliver combat service

support under any condition at any location around the world. Based on its performance providing United States troops in Bosnia with housing, food, water, laundry, heavy equipment and other supplies under the original LOGCAP contract, KBR was awarded an unprecedented ten-year deal in December 2001 to supply similar logistical support to United States military operations around the world. This relationship resulted in KBR also receiving the exclusive LOGCAP II and LOGCAP III contracts.

14. The LOGCAP programs pay KBR through a cost-plus arrangement, meaning KBR is guaranteed to recover its expenses, and receive a set profit. Under these arrangements, KBR has been paid billions of dollars.

15. KBR performs the contractual duties using resources from within its company and also relies on separate subcontracting entities to provide specialty services and supplies. It is typical for the sub-contractual agreement between KBR and its subcontractors to also be structured on a cost-plus basis. KBR would then pass the total costs of using subcontractors to the United States. Often, in order to provide supplies and services in accordance with military specifications and timetables, several layers of subcontractors were used. In each instance, these subcontractor costs, such as materials or transportation were passed up through the contractual chain. KBR was then supposed to bill the government under LOGCAP cost-plus standards.

## APPLICABLE STATUTES

16. The applicable portions of the FCA provide liability to a person or corporation who:

 1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false claim for payment or approval;

 2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government;

    3)    conspires to defraud the government by having a false statement or fraudulent claim allowed or paid.

17. The purpose of the False Claim Act is to discourage fraud against the government. The purpose of qui tam provisions of the Act is to encourage individuals, such as relators, with knowledge of the fraud to come forward and expose the violators. A corporation is liable under the FCA for fraud of an agent who acts with apparent authority even if the corporation received no benefit from the agent's fraud.

18. The purpose of the Anti-Kickback Act is to eliminate the practice of subcontractors paying fees to employees, or of granting gifts or gratuities to employees of cost-reimbursable prime-contractors, or of higher tier subcontractors, for the purpose of securing the award of subcontracts. A kickback means any money, fee, commission, credit, gift, thing of value or compensation of any kind which is provided directly or indirectly, to any prime contractor, prime contractor employee, subcontractor or subcontractor employee for the purpose of obtaining favorable treatment with a contract. Kickbacks which are incorporated in a conspiracy to commit fraud on the government give rise to a cause of action under the FCA.

19. It is a violation of the FCA for a government contractor to falsely certify compliance with a federal statute or regulation. Claims by the United States arise when the false certification by a contractor, express or implied, is used to obtain a payment. A false certification is the fraudulent completion of a certificate of compliance with a statute or regulation which caused the government to make a payment which it would not have honored if it were aware of the violation.

## STATEMENT OF FACTS

20. During LOGCAP I, Wesco was the primary supplier of electrical supplies to the military. Elders was employed by Wesco as sales manager or representative. Elders handled the KBR account

in Europe. In his position, Elders was the responsible agent in the European theater for Wesco in dealing with the military, KBR and other subcontractors.

21.  In the Bosnian conflict, Wesco, through Elders, was increasing or "marking up" the actual cost of electrical supplies and transportation costs before its invoices were submitted to KBR. KBR then submitted or passed through the invoices inflated by Wesco which were then paid by the United States.

22.  With its transportation subcontractors, Wesco would use the promise of additional work to solicit inflated invoices from the subcontractors. In some instances, after initial transportation invoices were submitted, Elders would request a subsequent, substitute invoice with an inflated cost. The practice of submitting falsified invoices was also frequent among transportation subcontractors.

23.  Eagle Global Logistics, Inc., now known as CEVA, Inc., ("EGL"), and Panalpina are known as freight forwarding companies, (hereinafter collectively referred to as "Freight Forwarding Defendants"). Freight forwarders are companies which provide domestic and international freight transportation, customs brokerage, global logistics, supply chain management and information services for commercial and industrial customers.

24.  During most of the LOGCAP operations, the KBR manager responsible for transportation logistics was Bennett.

25.  EGL and Panalpina routinely provided illegal inducements to Bennett and other KBR employees in exchange for business opportunities.

26.  For years, KBR has submitted inflated invoices to the United States from its subcontractors. KBR has also passed through inflated expenses from contracts procured and maintained through fraud, kickbacks and false certifications. Many transportation invoices which have been incurred

through express or implied false certifications have been processed by KBR. During LOGCAP, KBR has used its cost plus contracts to submit false invoices and falsely certified invoices with at least deliberate ignorance or reckless disregard.

28. Relators, on behalf of the United States, plead the discovery rule. Because of the intentional acts of concealment engaged in by Defendants, the knowledge of their violations set forth in this complaint were not otherwise discoverable by the United States prior to the filing of this complaint.

## CAUSES OF ACTION

### COUNT I

28. This is an action brought on behalf of the United States under the FCA, 31 U.S.C. § 3729 et seq. against Kellogg, Brown & Root and Bennett

29. Paragraphs 1 through 27 are hereby incorporated.

30. For purposes of obtaining payment or approval for payment from the United States, Kellogg, Brown & Root and Bennett knowingly presented or caused to be presented false or fraudulent invoices.

31. The United States, unaware of the foregoing circumstances and conduct of the defendants and in reliance on the truth and accuracy of the claims for payment, authorized the payment of those claims and has been damaged in amounts to be determined.

### COUNT II

32. This is an action brought on behalf of the United States under the FCA, 31 U.S.C. § 3729 et seq. against Wesco and Elders.

33. Paragraphs 1 through 27 are hereby incorporated.

34. For purposes of obtaining payment or approval for payment from the United States, Wesco

996393                                    -7-

and Phil Elders knowingly presented or caused to be presented false or fraudulent invoices.

35. The United States, unaware of the foregoing circumstances and conduct of the defendants and in reliance on the truth and accuracy of the claims for payment, authorized the payment of those claims and has been damaged in amounts to be determined.

## COUNT III

36. This is an action brought on behalf of the United States under the FCA, 31 U.S.C. § 3729 et seq. against Panalpina.

37. Paragraphs 1 through 27 are hereby incorporated.

38. For purposes of obtaining payment or approval for payment from the United States, Panalpina knowingly presented or caused to be presented false or fraudulent invoices.

39. The United States, unaware of the foregoing circumstances and conduct of the defendants and in reliance on the truth and accuracy of the claims for payment, authorized the payment of those claims and has been damaged in amounts to be determined.

## COUNT IV

40. This is an action brought on behalf of the United States pursuant to common law against Kellogg, Brown & Root and Bennett

41. Paragraphs 1 through 27 are hereby incorporated.

42. As a result of the foregoing, Kellogg, Brown & Root and Bennett have been unjustly enriched to the detriment of the United States in an amount to be determined.

## COUNT V

140. This is an action brought on behalf of the United States pursuant to common law against Wesco and Elders.

43. Paragraphs 1 through 27 are hereby incorporated.

44. As a result of the foregoing, Wesco and Phil Elders have been unjustly enriched to the detriment of the United States in an amount to be determined.

## COUNT VI

45. This is an action brought on behalf of the United States pursuant to common law against Panalpina.

46. Paragraphs 1 through 27 are hereby incorporated.

47. As a result of the foregoing, Panalpina has been unjustly enriched to the detriment of the United States in an amount to be determined.

## PRAYER

For Relator on behalf of the United States government demands the following as follows:

1. Count I against Bob Bennett, for treble the amount of damages to United States government to be determined, and all allowable penalties, fees and costs under the FCA, as amended;

2. Count IV against Bob Bennett, in the amount of the benefit the United States conferred upon Bob Bennett, pre-judgment interest, plus fees and costs, and a judgment declaring that those amounts are rightfully the property of the United States, and that Bob Bennett holds said proceeds in trust for the use and benefit of the United States;

3. Count I against Kellogg, Brown & Root, for treble the amount of damages to United States government to be determined, and all allowable penalties, fees and costs under the FCA, as amended;

4. Count IV against Kellogg, Brown & Root, in the amount of the benefit the United States conferred upon Kellogg, Brown & Root, pre-judgment interest, plus fees and costs, and a

judgment declaring that those amounts are rightfully the property of the United States, and that Kellogg, Brown & Root holds said proceeds in trust for the use and benefit of the United States;

5. Count II against Wesco International, Inc., for treble the amount of damages to United States government to be determined, and all allowable penalties, fees and costs under the FCA, as amended;

6. Count V against Wesco International, Inc., in the amount of the benefit the United States conferred upon Wesco, pre-judgment interest, plus fees and costs, and a judgment declaring that those amounts are rightfully the property of the United States, and that Wesco holds said proceeds in trust for the use and benefit of the United States;

7. Count II against Phil Elders, for treble the amount of damages to United States government to be determined, and all allowable penalties, fees and costs under the FCA, as amended;

8. Count V against Phil Elders, in the amount of the benefit the United States conferred upon Phil Elders, pre-judgment interest, plus fees and costs, and a judgment declaring that those amounts are rightfully the property of the United States, and that Phil Elders holds said proceeds in trust for the use and benefit of the United States;

9. Count III against Panalpina, Inc., for treble the amount of damages to United States government to be determined, and all allowable penalties, fees and costs under the FCA, as amended;

10. Count VI against Panalpina, Inc., in the amount of the benefit the United States conferred upon Panalpina, Inc., pre-judgment interest, plus fees and costs, and a judgment declaring that those amounts are rightfully the property of the United States, and that Panalpina, Inc. holds said proceeds in trust for the use and benefit of the United States;

11. And all other relief this Court may deem just and equitable.

Respectfully submitted:

STRONG PIPKIN BISSELL & LEDYARD, L.L.P.

*(signature)*

Greg M. Dykeman
State Bar No. 06325100
14th Floor, San Jacinto Building
595 Orleans
Beaumont, Texas 77701-3255
Tel: (409) 981-1120
Fax: (409) 981-1010

Mitchell A. Toups
State Bar No. 20151600
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Ave., Suite 400
Beaumont, Texas 77704-0350
Tel: (409) 838-0101
Fax: (409) 838-6780

ATTORNEYS FOR RELATORS,
DAVID R. VAVRA and JERRY HYATT
On behalf of THE UNITED STATES

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record via electronic filing on this 23 day of February, 2010.

*(signature)*

Greg M. Dykeman

**SEALED**

This Court granted Relators' Motion to File Under Seal on January 23, 2004.