IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. | § | |
| DAVID R. VAVRA and | § | |
| JERRY HYATT, | § | |
| | § | |
| Plaintiff, | § | CIVIL NO.  1:04CV00042 |
| | § | |
| v. | § | |
| | § | |
| KELLOGG BROWN & ROOT, INC., | § | JUDGE MARCIA  A.  CRONE |
| 4100 Clinton Drive | § | |
| Houston, Texas  77020, | § | |
| | § | |
| Defendant. | § | |

## <u>COMPLAINT OF THE UNITED STATES OF AMERICA</u>

The United States of America, having partially intervened in this *qui tam* action,

brings this Complaint against Kellogg Brown & Root, Inc. (KBR), for relief under the

False Claims Act, 31 U.S.C. § 3729; the Anti-Kickback Act, 41 U.S.C. §§ 51-58; and the

common law, based on  allegations that KBR employees accepted kickbacks from freight

forwarders EGL, Inc. (also known as Eagle Global Logistics) and Panalpina, Inc. in

connection with subcontracts awarded by KBR to EGL and Panalpina for the transport of

United States military supplies and equipment in support of KBR's contract with the

United States Army for logistical support in Iraq and elsewhere, known as LOGCAP III.

The United States alleges as follows:

**Jurisdiction and Venue**

1.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C.

§§ 1331, 1345.

2.      Venue is proper in this District under 28 U.S.C. § 1391(b) and 31 U.S.C.

§ 3732(a).

**Parties**

3.      Plaintiff is the United States of America, acting on behalf of the United

States Army within the Department of Defense.

4.      Defendant KBR is a corporation organized under the laws of the State of

Delaware and transacts business within this District.  KBR is the prime contractor on

LOGCAP III, an Army contract to provide logistical support to the United States military.

5.      Relators Jerry Hyatt and David R. Vavra are individuals who are active in

the air freight business and who initiated this action by filing a complaint under the *qui*

*tam* provision of the False Claims Act, 31 U.S.C. § 3730(b).

**Factual Allegations**

*The Government Contract at Issue*

6.      On December 14, 2001, the Army awarded KBR contract number

DAAA09-02-D-0007, also known as LOGCAP III.  LOGCAP III implements the Army's

Logistics Civil Augmentation Program (LOGCAP), which provides for the use of private

contractors to perform non-combat services in support of military operations around the

world.  This support includes such items as transportation, maintenance, facilities management, and dining facilities services.

7.      LOGCAP III is an indefinite delivery/indefinite quantity contract in which the government's requirements are specified through a series of task orders.  Under the task orders at issue here, KBR is reimbursed for its costs of performing the task order plus a one percent base fee or profit, plus an award fee up to two percent.

8.      KBR performs a significant portion of its obligations under LOGCAP III through subcontractors.  These subcontractors bill KBR for the costs of the services they provide pursuant to their subcontracts with KBR.  KBR, in turn, bills the Army for its costs incurred under the subcontracts plus associated fees.  The costs at issue here are those related to the transportation of United States military equipment and supplies into Iraq, Afghanistan, and Kuwait, by KBR subcontractors EGL and Panalpina from 2002 through 2006.

9.      KBR is the prime contractor under LOGCAP III.  EGL and Panalpina are KBR's subcontractors under LOGCAP III.

10.     KBR subcontracted with EGL by means of work releases issued under Master Agreement No. GU36-HOU-A0003, effective April 24, 2002 through 2006.

11.     Similarly, KBR subcontracted with Panalpina through work releases issued during the same time period.

12.     From 2002 to 2006, employees in KBR's transportation department

accepted kickbacks from employees of EGL and Panalpina in connection with

transportation subcontracts, in violation of federal law and the LOGCAP III contract.

***Pertinent Contractual and Statutory Provisions***

13.     Clause H-13 of LOGCAP III requires KBR to comply with, and to ensure

that its subcontractors comply with, all applicable Department of Defense directives,

laws, and international agreements.  Specifically, Clause H-13 states:

> The contractor shall comply, and shall ensure that all
> deployed employees, subcontractors, subcontractors
> employees, invitees and agents comply with pertinent Service
> and Department of Defense directives, policies, and
> procedures, as well as federal statutes, judicial interpretations
> and international agreements . . . .
>
> The contractor shall at all times be responsible for the conduct
> of its employees and those of its subcontractors and invitees.

14.     LOGCAP III incorporates by reference Federal Acquisition Regulation

(FAR) 52.253-7, Anti-Kickback Procedures, which requires contractors to establish and

follow reasonable procedures to prevent and detect possible violations of the Anti-

Kickback Act, 41 U.S.C. §§ 51-58.  FAR 52.253-7 also requires that the contractor

promptly report possible violations to the government.

15.     The Anti-Kickback Act prohibits the solicitation or acceptance of any

kickback in connection with a government contract.  41 U.S.C. § 53.

16.     A kickback is "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided directly or indirectly, to any prime contractor [or] prime contractor employee . . . for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract . . . ."  41 U.S.C. § 52(2).

17.     Persons who knowingly engage in conduct prohibited by the Anti-Kickback Act are liable for a civil penalty of twice the amount of the kickback plus up to $11,000 for each violation.  41 U.S.C. § 55(a)(1).

18.     The Anti-Kickback Act defines "persons" to include corporations as well as individuals.  41 U.S.C. § 52(3).

19.     Persons who are liable under the Anti-Kickback Act may also be liable under the False Claims Act.  The False Claims Act provides civil liability for any person who knowingly presents, or causes to be presented, false or fraudulent claims for payment by the United States.  31 U.S.C. § 3729.

20.     A corporation is a "person" within the meaning of the False Claims Act.

21.     A person acts "knowingly" if that person has actual knowledge, acts in deliberate ignorance of the truth, or acts in reckless disregard of the truth.  Specific intent to defraud the United States is not required.  31 U.S.C. § 3729(b).

22.     A person who violates the False Claims Act is liable for three times the government's damages plus a civil penalty of $5,500 to $11,000 for each false claim.

### *The Payment of Kickbacks to KBR Employees by EGL*

23.     To fulfill its obligation under LOGCAP III to transport United States military equipment and supplies into Iraq, Afghanistan, and Kuwait, KBR entered into Master Agreement Number GU36-HOU-A003 with EGL.  Pursuant to that agreement, KBR periodically issued work releases or subcontracts to EGL for transportation services. Each such subcontract was separately priced.

24.     During the time period at issue, KBR's Corporate Traffic Supervisor for LOGCAP III was Robert Peter Bennett.  Mr. Bennett, along with other KBR employees, was responsible for the day-to-day supervision of EGL's performance on its subcontracts with KBR.  At times, Mr. Bennett reviewed invoices submitted by EGL to KBR in connection with EGL's subcontract work under LOGCAP III.

25.      During the time period at issue, Kevin Andre Smoot was Managing Director of EGL's  freight forwarding station in Houston, Texas.  Mr. Smoot was responsible for ensuring that EGL fulfilled its responsibilities under its subcontracts with KBR.  In connection with EGL's subcontracts under LOGCAP III, Mr. Bennett worked with, and had direct contact with, EGL employees, including Mr. Smoot, regarding the requirements for transporting military goods to Iraq, Afghanistan, and Kuwait.

26.     From 2002 through 2006, Mr. Bennett and at least four other employees in KBR's transportation department, accepted kickbacks from Mr. Smoot and other EGL employees acting at Mr. Smoot's direction, on at least 93 occasions.  The kickbacks

included meals, drinks, golf outings, tickets to rodeo events, baseball games, football

games, and other gifts and entertainment.  EGL employees documented the kickbacks in

their expense records.  These kickbacks are identified in Exhibit A.

27.    Mr. Bennett and the other KBR employees knew that it was illegal to accept

kickbacks in connection with the award and performance of subcontracts under LOGCAP

III.  These employees also knew that EGL paid the kickbacks to obtain favorable

treatment on its subcontracts with KBR, such as overlooking service failures and

continuing to award new subcontracts to EGL despite such failures.

*Bennett and Smoot Plead Guilty to Kickbacks in Connection with LOGCAP III*

28.    On July 20, 2007, Kevin Andre Smoot pleaded guilty in the United States

District Court for the Central District of Illinois to violating the Anti-Kickback Act, 41

U.S.C. §§53(1) and 54, for paying or directing the payment of kickbacks to KBR

employees, as described above.  Mr. Smoot admitted that he paid or authorized the

kickbacks knowing that they were improper and that he did so to obtain favorable

treatment from KBR, such as overlooking service failures and continuing to award EGL

subcontracts under LOGCAP III.  Mr. Smoot further admitted that the kickbacks in fact

influenced KBR employees to give EGL favorable treatment on its subcontracts.

29.    On August 27, 2008, Robert Peter Bennett pleaded guilty in the United

States District Court for the Central District of Illinois to violating the Anti-Kickback

Act, 41 U.S.C. §§53(2) and 54, for accepting kickbacks from EGL on at least 40 different

occasions.  Mr. Bennett admitted that he accepted the kickbacks knowing that EGL paid them to obtain favorable treatment from KBR on EGL's subcontracts under LOGCAP III.

***The Payment of Kickbacks to KBR Employees by Panalpina***

30.     Similar to the arrangement with EGL, KBR awarded work releases or subcontracts to freight forwarder Panalpina to fulfill its obligations under LOGCAP III to transport United States military equipment and supplies into Iraq, Afghanistan, and Kuwait.

31.     During the time period at issue, Grant Wattman was Panalpina's primary account representative in connection with Panalpina's subcontracts with KBR.

32.     From 2003  through 2006, Mr. Bennett and other KBR transportation department employees accepted kickbacks from Mr. Wattman and other Panalpina employees acting at Mr. Wattman's direction.  The kickbacks included meals, drinks, golf outings, and other gifts and entertainment.  Panalpina employees documented the kickbacks in their expense records.  These kickbacks are identified in Exhibit B.

33.     Mr. Bennett and the other KBR employees knew that it was illegal to accept kickbacks in connection with the award and performance of subcontracts under LOGCAP III.  These employees also knew that Panalpina paid the kickbacks to obtain favorable treatment on its subcontracts with KBR, such as overlooking service failures and continuing to award subcontracts to Panalpina despite such failures.

*KBR's Breach of Contract and False Claims*

34.     In breach of its obligations under the LOGCAP III contract and FAR

52.253-7, KBR failed to prevent Mr. Bennett and other employees in its transportation

department from accepting kickbacks and failed to report those kickbacks to the Army

once they occurred.

35.     Both EGL and Panalpina billed KBR for subcontracts tainted by the

kickbacks described above.  The cost of these subcontracts was inflated at a minimum by

the amount of the kickbacks paid by EGL and Panalpina and accepted by KBR's

employees.  KBR, in turn, included these costs, plus fees, in its invoices to the Army

under LOGCAP III, knowing that the subcontracts were tainted by kickbacks.

## COUNT I
### False Claims Act, 31 U.S.C. § 3729

36.     The United States realleges paragraphs 1 through 35, which are

incorporated herein by reference as if they were set forth in full.

37.     Beginning in 2002, and continuing through at least 2006, KBR knowingly

presented or caused to be presented to the United States false or fraudulent claims for

payment under LOGCAP III, which claims were materially false or fraudulent because

they were tainted by KBR's acceptance of kickbacks from EGL and Panalpina, and

otherwise in violation of the terms of the LOGCAP III contract and contrary to law, all in

violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

38.     As a result of KBR knowingly presenting these false or fraudulent claims to the United States, the United States paid the claims and suffered damages in an amount to be determined at trial.

## COUNT II
### Anti-Kickback Act, 41 U.S.C. §§ 51-58

39.     The United States realleges paragraphs 1 through 35, which are incorporated herein by reference as if they were set forth in full.

40.     As a result of KBR's acts stated above, KBR violated 41 U.S.C. § 55(a)(1), by knowingly engaging in conduct prohibited by 41 U.S.C. § 53 with respect to the kickbacks accepted by its employees.

41.     Pursuant to 41 U.S.C. § 55(a)(1), the United States is entitled to recover from KBR double the amount of those kickbacks plus up to $11,000 per kickback, to be determined at trial.

## COUNT III
### Breach of Contract

42.     The United States realleges paragraphs 1 through 35, which are incorporated herein by reference as if they were set forth in full.

43.     KBR breached its LOGCAP III contract with the Army by its employees accepting kickbacks, and by failing to take adequate steps to prevent and report such conduct.

44.     As a consequence, the United States has suffered damages in an amount to be determined at trial.

## COUNT IV
## Unjust Enrichment

45.     The United States realleges paragraphs 1 through 35, which are incorporated herein by reference as if they were set forth in full.

46.     As a result of KBR's acts stated above, KBR has been unjustly enriched and has received profit and other monies to which it is not entitled by contract or otherwise, in an amount to be determined at trial.  In equity and good conscience, KBR should not retain these amounts.

## COUNT V
## Payment by Mistake

47.     The United States realleges paragraphs 1 through 35, which are incorporated herein by reference as if they were set forth in full.

48.     As a result of KBR's acts stated above, the United States paid KBR in the mistaken belief that the amounts claimed were for services properly provided in accordance with contract terms and applicable law.  As a result, the payment of those claims was by mistake and not authorized by law.

49.     The United States has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States prays for judgment against KBR as follows:

Under Count I, damages as provided by statute, plus such civil penalties as are allowable by law, the costs of this action, and such additional and other relief as the Court deems just and proper.

Under Count II, such civil penalties as are allowable by law, together with the costs of this action and such additional and other relief as the Court deems just and proper.

Under Count III, damages in the amount of the loss caused to the United States by KBR's breach of contract, together with interest, the costs of this action, and such additional and other relief as the Court deems just and proper.

Under Count IV, judgment in the amount by which KBR has been unjustly enriched, together with interest, the costs of this action, and such additional and other relief as the Court deems just and proper.

Under Count V, damages in the amount of the loss caused to the United States by the mistaken and unauthorized payments, together with interest, the costs of this action, and such additional and other relief as the Court deems just and proper.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN MALCOLM BALES
United States Attorney

*/s/ Michael W. Lockhart*
MICHAEL W. LOCKHART
Assistant United States Attorney
Eastern District of Texas
Texas Bar No. 12472200
350 Magnolia Avenue, Suite 150
Beaumont, Texas 77701-2237
(409) 839-2538
(409) 839-2643 (fax)
Email: USATXE.CivECFBmt@usdoj.gov


*/s/ Stanley E. Alderson*
JOYCE R. BRANDA
JUDITH RABINOWITZ
STANLEY E. ALDERSON
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Post Office Box 261
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 307-6696

Attorneys for Plaintiff United States of America