# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:04-cv-00042-MAC |
| ) | |
| KELLOGG BROWN & ROOT, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DEFENDANT KELLOGG BROWN & ROOT, INC.'S TRIAL BRIEF ON KBR'S ALLEGED PRIVILEGE WAIVER

KBR solicited no testimony about its privileged Code of Business Conduct ("COBC")[1] investigation from Ty Hippert, Hippert gave no voluntary testimony in response to KBR examination regarding the substance of the COBC document, and KBR in no form or fashion seeks to rely upon advice-of-counsel or any other defense that would necessitate waiver of its privilege over the COBC document in dispute here. Furthermore, the government's off-the-cuff and unsupported assertions that KBR's reference to its zero tolerance policy or years ago sharing privileged material with Hippert about his direct report, Bob Bennett, destroy privilege, are both claims that have no basis in law. The Court should find that KBR has not waived privilege as to the COBC document KBR produced to the Court for its *in camera* review.[2]

---

[1] KBR's COBC investigations are "materially indistinguishable" from those conducted in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), and have therefore been found to be privileged on that basis. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014).

[2] KBR has confirmed that the document to which Mr. Hippert referred is the document that KBR has produced to the Court for *in camera* review.

**Argument**

I.   **KBR's Examination of Ty Hippert Did Not Waive Privilege**

For the following reasons, in no way did KBR's examination of Ty Hippert effect an intentional, express, or implied waiver of the privilege of the COBC summary document:

**First**, Hippert's testimony on direct examination disclosed no privileged substance of the COBC summary document he reviewed, so he did not expressly waive KBR's privilege. The fact he reviewed the COBC summary, or that the COBC summary exists, is not privileged. *See United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986) (merely disclosing the subject discussed with the attorney does not waive the privilege protection). Likewise, the fact that Bob Bennett was disciplined after the COBC report issued is not privileged. Therefore, the combination of these non-privileged facts cannot effect a privilege waiver. "Where a defendant neither reveal[ed] substantive information [from the privileged document], nor prejudice[d] the [opponent's] case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver." *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) (R.B. Ginsburg, J.).[3]

**Second**, even if Hippert had disclosed any part of the substance of the COBC summary document when examined by KBR's counsel, he was not authorized or able to waive KBR's privilege because "a corporate employee cannot waive the corporation's privilege." *Sprague v.*

---

[3] Compelled disclosure of privileged material does not result in waiver. Therefore, Hippert's disclosure of some of the substance of the privileged communications in response to government questions and as compelled by the Court, Tr. Trans. 546:18-551:4 (June 24, 2015) ("MR. BUFFONE: . . . [P]rivilege . . . has clearly been waived. THE COURT: I agree with that. I overrule the objection."; Att'y Buffone: "Q. . . . [W]hat was contained in that summary?"; "Q. And which employees?"; "Q. And what was in the memo in relation to Mr. Bob Bennett?"), does not count as express waiver. *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (disclosure compelled by court does not waive privilege); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 432 (D. Kan. 2009) (no implied waiver where testimony was elicited by adversary's counsel).

*Thorn Americas, Inc.*, 129 F.3d 1355, 1371 (10th Cir. 1997) (quoting *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir.1996)); *accord Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors.").

**Third**, KBR did not elicit any discussion of the substance of the COBC summary document, so if there was any disclosure, that disclosure was inadvertent. KBR asked only the yes or no question: "Did KBR take any disciplinary action against Mr. Bob Bennett?" Tr. Trans. 543:5-6 (June 24, 2015). Hippert's second answer, after the Court overruled the government's objection to his first, simple "Yes," went beyond what KBR's question solicited. *See id.* 543:17-19 ("[T]hey conducted an internal investigation, and they made a decision based off of that."). KBR's counsel did not ask him about the COBC investigation or documents. It is evident from the transcript that KBR's counsel was not even aware that Hippert had reviewed the COBC documents until it was revealed during the course of his June 24 testimony. Given KBR's aggressive posture with respect to defending the privilege of its COBC documents in all of its litigation,[4] KBR would not have taken the risk of leading Hippert to discuss the COBC materials. Any disclosure of privileged material by KBR was "inadvertent," and "d[id] not operate as a waiver." Fed. R. Civ. P. 502(b).

**Fourth,** KBR did not put the COBC materials at issue merely by asking about the fact of Bob Bennett's discipline. Implied waiver applies only "where the holder of the privilege has

---

[4] *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014) (granting KBR's first petition for mandamus on privilege question regarding COBC materials), *cert. denied sub nom. United States ex rel. Barko v. Kellogg Brown & Root, Inc.*, 135 S. Ct. 1163 (2015); *In re Kellogg Brown & Root, Inc.* (D.C. Cir.) (No. 14-5319) (court heard oral argument on May 11, 2015, in KBR's second mandamus petition on implied waiver of privilege questions regarding COBC materials, decision pending). Throughout this litigation, including in its responses to discovery requests, KBR has consistently asserted privilege over the COBC investigation and materials, and has produced only responsive, non-privileged documents and information.

taken some affirmative step to place the content of the confidential communication" at issue. *In re Lott*, 424 F.3d 446, 455 (6th Cir. 2005) (emphasis added); *accord United States v. Seale*, 600 F.3d 473, 492 (5th Cir. 2010) (stating two part implied waiver inquiry: (1) "[D]oes the person holding the right to claim the privilege [subjectively] intend to waive it?" and (2) "[I]s it fair and consistent with the assertion of the claim or defense being made to allow the privilege to be invoked?"). The question of whether Bob Bennett was disciplined does not turn on the contents of the privileged documents. Additionally, "[t]estimony by [Hippert] that [he] consulted" privileged materials "does not, in and of itself, place the content of those communications at issue." *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F. Supp. 2d 256, 274 (S.D.N.Y. 2010); *White*, 887 F.2d at 271. Further, KBR did not put Bob Bennett's discipline at issue to begin with—the government did, Tr. Trans., at 14:1-12 (June 22, 2015 rough draft sess. 1b) (AUSA Lockhart: "Q. . . . [D]id any [KBR] employees . . . receive . . . discipline"; Hal Francis: "A. Yes. . . . [Bob] Bennett was terminated from employment with KBR."); Tr. Trans. Vol. 3, at 181:15-183:17 (June 23, 2015) (Att'y Buffone: "Q. . . . [D]id you hear about any other employees at KBR receiving –"; Don Gavin: "A. I was told that Bob [Bennett] resigned."), and "[a] party's mere assertion that it is in the right and its opponent in the wrong does not constitute conduct prejudicing the rights of the opposing party and does not, therefore, give rise to an implied waiver." *See AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, No. 02-cv-4471, 2006 WL 6503363, at *2 (S.D. Tex. Jan. 10, 2006); *Ward v. Succession of Freeman*, 854 F.2d 780, 789 (5th Cir. 1988) (no waiver where privilege holder responded to adversaries' effort to "exploit[] the attorney-client communications . . . to prove their claims").

**Fifth**, KBR affirmatively withdraws any reliance the Court understood it to have made upon the privileged COBC investigation, and any implied waiver should by that withdrawal be

avoided.  Courts widely permit parties to back off from issues that might trigger implied waiver. "[T]he holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition." *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003); *accord AllVoice Computing*, 2006 WL 6503363, at *3 ("In light, however, of [the party's] assertion that it will not rely upon the opinion at trial, . . . the Court declines to find that [the party] has waived 'the oldest and most venerated of the common law privileges of confidential communications.'"); *In re Cnty. of Erie*, 546 F.3d 222, 226, 229 (2d Cir. 2008) (no waiver where defendants did not rely on deposition testimony referring to attorney-client communications); *Gardner v. Major Auto. Cos.*, No. 11 Civ. 1664, 2014 WL 1330961, at *1-3, 5-7 (E.D.N.Y. Mar. 31, 2014) (no waiver where defendants disclaimed advice-of-counsel defense, even though deposition testimony referred to such advice).[5]

## II.     Transmission of the COBC Report to Hippert Did Not Destroy Privilege

The mere fact that the privileged COBC report in question was transmitted to Mr. Hippert by his direct supervisor does not destroy the privilege attaching to that document.  In the context of the corporate attorney-client privilege, it is the corporation as a whole that is the client, not any limited subset of people within the corporation.  *Upjohn*, 449 U.S. at 396 (attorney-client privilege can apply to communications with all corporate employees, not just those inside the

---

[5] *See also Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-cv-865, 2014 WL 2600499, at *3 (N.D. Cal. June 10, 2014) (party could avoid implied waiver by "disavow[ing] [its] use" of former employee's testimony), *vacated in part on other grounds*, 2014 WL 4076319 (N.D. Cal. Aug. 18, 2014); *Radware, Ltd. v. A10 Networks, Inc.*, No. 13-cv-2021, 2014 WL 116428, at *3 (N.D. Cal. Jan. 10, 2014) (offering party seeking disqualification of opposing counsel choice of "withdraw[ing] the privileged documents" it submitted for *in camera* review or producing them to opposing counsel); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 48 (E.D.N.Y. 2013) (defendants could "choose whether to assert the[ir] affirmative defense or the [attorney-client] privilege"), *aff'd*, 2014 WL 223173 (E.D.N.Y. Jan. 21, 2014); *Oracle Am., Inc. v. Innovative Tech. Distribs.*, LLC, No. 11-cv-1043-, 2011 WL 2559825, at *2 (N.D. Cal. June 28, 2011) (similar to *Radware*).

"control group" of upper management).  Privilege may attach to an attorney's communications transmitted to and from both management and low-level employees.  *Id.* at 391-92.  Mr. Hippert is—and was at the time he received the COBC report—a KBR employee, not some third party outside of the corporate body.  Furthermore, Mr. Hippert's corporate responsibilities included monitoring and disciplining subordinate employees such as Bob Bennett, who reported to him at that time.  Tr. Trans. 543:12-13 (June 24, 2015).  Accordingly, Mr. Hippert's receipt and review of a privileged communication relevant to the prospective discipline of Mr. Bennett would not destroy the privilege.  *In re Vioxx Products Liability Litig.*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007) ("[The attorney-client privilege] protects communications … between corporate employees in which prior advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities.").[6]

### III. Reference to KBR's Zero Tolerance Policy Does Not Destroy Privilege

The fact that KBR maintains a "zero tolerance" policy as part of its Code of Business Conduct is neither privileged nor confidential.  *See Johnson v. Medisys Health Network*, No. 10-cv-1596, 2011 WL 5222917 (E.D.N.Y. June 1, 2011) (compliance program's existence and its provisions are not confidential).  The revelation of non-privileged facts simply cannot by itself result in a waiver of attorney-client privilege.  *See, e.g., White*, 887 F.2d at 270-71 (no implied waiver where defendant testified to the non-privileged fact that his attorney reviewed the matter at issue, but did not assert an advise-of-counsel defense or otherwise disclose substance of the communication).  "Where a defendant neither reveals substantive information, nor prejudices the

---

[6] Even if the Court finds that KBR waived the attorney-client privilege over the COBC report via Mr. Hippert's review, the report itself is still protected as attorney opinion work product.  *See Upjohn*, 449 U.S. at 397-402 (investigatory notes and memoranda are opinion work product); *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (work product doctrine extends to materials prepared by an investigator).  Opinion work product may not be waived merely by disclosing to a non-privileged person.  *Shields*, 864 F.2d at 382.

[opponent's] case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver." *Id.* at 271. There can be no disagreement that KBR's general policies do not reveal substantive privileged information (i.e., the content of KBR's privileged COBC reports). Nor can the government show that it has been prejudiced or that this Court has been in any way "misled" by KBR's reference to these policies. KBR's testimony as to its blanket policies concerning kickbacks and bribes are exactly the type of "general assertion[s] lacking substantive content" that *White* holds insufficient to waive the attorney-client privilege. Nevertheless, a corporation's structures for identifying potential fraud (such as its COBC policies) may be relevant to a corporation's "knowledge" of fraud where it does occur. *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1275 (D.C. Cir. 2010). KBR did not waive the attorney-client privileged COBC report at issue here merely by confronting the knowledge aspect of AKA liability by eliciting testimony and presenting evidence demonstrating the non-privileged fact that KBR maintains a "zero tolerance policy" for kickbacks and bribes in its Government Procurement Manual.

## Conclusion

The Court should find that KBR has not waived privilege.[7]

---

[7] If the Court decides that privilege has been waived, that waiver should be limited to the COBC summary document provided to the Court *in camera*, the only document reviewed by Mr. Hippert. *Bittaker*, 331 F.3d at 720 ("[A] court must impose [an implied] waiver no broader than needed to ensure the fairness of the proceedings before it."); *In re Lott*, 424 F.3d at 453 ("Implied waivers are consistently construed narrowly."). Also, to preserve KBR's ability to appeal this issue, KBR would request a protective order limited further disclosure of the document outside of the context of these proceedings.

        Respectfully submitted,

        /s/ Tirzah S. Lollar
        Tirzah S. Lollar
        tlollar@velaw.com
        Christine N. Roushdy
        croushdy@velaw.com
        VINSON & ELKINS L.L.P.
        2200 Pennsylvania Avenue, NW
        Suite 500 W
        Washington, DC 20037
        (202) 639-6500
        (202) 639-6604 (facsimile)

        Patricia D. Chamblin
        Texas Bar No. 04086400
        MEHAFFYWEBER, P.C.
        Post Office Box 16
        Beaumont, Texas 77704
        (409) 835-5011
        (409) 835-5177 (facsimile)
        patriciachamblin@mehaffyweber.com

        *Attorneys for Kellogg Brown & Root, Inc.*

June 25, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of June, 2015, I caused the foregoing to be served by email through the Court's Electronic Case Filing system upon all counsel of record.

/s/ Tirzah S. Lollar
Tirzah S. Lollar