UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 1:04-CV-00042 |
| v. § | |
| § | JUDGE MARCIA A. CRONE |
| KELLOGG BROWN & ROOT, INC. § | |
| Defendant. § | |

## UNITED STATES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The United States respectfully moves the Court to compel defendant Kellogg Brown & Root, Inc. (KBR) to produce documents related to KBR's internal investigation of Robert Bennett's receipt of kickbacks – both the summary report of this investigation that Mr. Hippert testified he saw, and the underlying source materials that form the basis of this summary.

Throughout the trial, KBR has repeatedly offered testimony about its "zero tolerance policy" regarding the acceptance of gratuities by KBR employees. Seeking to show that it diligently enforced these compliance policies, KBR has further put the substance of its internal investigation at issue, offering testimony about the disciplinary action it took as a direct result of investigating Mr. Bennett's acceptance of gratuities to show it acted as a good corporate citizen, and, thus, did not "knowingly" accept kickbacks from subcontractors on the LOGCAP 3 government contract. By seeking to use its investigation-inspired discipline of Mr. Bennett as evidence in this trial, KBR has used its purportedly privileged investigation as a ''sword,'' and may not, therefore hide it from scrutiny by invoking the "shield" of attorney-client privilege. Further, KBR cannot avoid the consequences of its intended litigation tactic by claiming inadvertent waiver, because Mr. Hippert's testimony clearly does not qualify as an inadvertent

waiver. Consequently, the court should order KBR to produce the summary memorandum Mr. Hippert reviewed and all underlying source materials from the investigation.

## ARGUMENT

**1. KBR Put the Substance of Its Internal Investigation 'At Issue' During Trial: Disclosure Was Not Inadvertent**

As the Fifth Circuit has explained, "[t]he attorney-client privilege was intended as a shield, not a sword," and, thus, "[w]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." *Conkling v. Turner*, 883 F.2d 431, 435 (5th Cir. 1989). Accordingly, "the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Id.* As KBR has invoked its internal investigation to its benefit during this trial, the use of attorney-client privilege to prevent the disclosure and analysis of all relevant facts surrounding this investigation would be "manifestly unfair" and Fifth Circuit precedent clearly establishes that such privilege is now waived.

Although KBR contends that its waiver of privilege with respect to its internal investigation of Mr. Bennett was "inadvertent," even a cursory examination of the record reveals nothing inadvertent about KBR's invocation of this internal investigation. As the Court has recognized – far from being a mistake – the elicitation of testimony from Mr. Hippert regarding KBR's investigation and evaluation of Mr. Bennett's conduct is patently part of KBR's trial strategy: "[Y]ou talked about it; and you're relying on it, that he was given the choice basically to resign or be terminated. You said you were being diligent in enforcing these policies; and

now you don't want to really reveal that, or reveal the results." (Trial Tr., June 24, 2015, Morning Second Session at 4:13-4:19.)

A review of Mr. Hippert's direct examination by KBR's counsel confirms this. Counsel for KBR elicited testimony regarding what actions KBR took in response to Mr. Bennett's bad acts to show that KBR "took them seriously," i.e., that KBR was enforcing its internal compliance policies with respect to receipt of kickbacks:

> Q. Now, upon learning of these allegations, did KBR take these allegations seriously?
>
> A: Yes.
>
> Q: Okay. Did KBR take any disciplinary action against Mr. Bob Bennett?
>
> A. Yes, they did.
>
> > MR. BUFFONE: Objection, foundation for the witness' testimony on this subject.
> >
> > MS. ROUSHDY: Mr. Hippert was Mr. Bennett's direct supervisor.
>
> A: I was his supervisor. Correct. He reported to me.
>
> > THE COURT: Overruled.
>
> Q. Mr. Hippert, you can answer the question.
>
> A. Yes, they did. Once they – they conducted an internal investigation, and they made a decision based off of that.
>
> Q. Okay. And what action was taken against Mr. Bennett.
>
> A. He ---
>
> Q Mr. Bob Bennett. Sorry.
>
> A. Well he was – basically we were to terminate him.
>
> Q. Now, did KBR formally terminate Mr. Bennett?
>
> A. No. He was given an option to be terminated or resign.

    Q. And what option did he elect?

    A. He resigned.

(Rough Draft Trial Tr., June 24, 2015, Morning First Session, 70:17 – 71:21.) Although KBR counsel's prior line of questioning had already raised the issue of KBR's investigation of the facts surrounding Mr. Bennett's conduct by attempting to show that KBR took allegations of kickbacks "seriously," at this point Mr. Hippert explicitly raised the internal investigation performed by KBR. Had KBR really desired not to invoke its internal investigation to its benefit at trial, counsel had the opportunity to stop this line of questioning at that point. But they did not. Although Mr. Hippert had just testified that KBR "made a decision based off of" its internal investigation, KBR's counsel went further, eliciting testimony that necessarily revealed the substance of the investigative findings by implication as it resulting in KBR's decision to either terminate Mr. Bennett or force him to resign.

    KBR's invocation of the internal investigation is intended to present a clear message: KBR acted diligently and responsibly as demonstrated by its investigation and evaluation of the facts surrounding Mr. Bennett's receipt of kickbacks. Yet, having raised this message at trial through its own questioning of a friendly witness, it now contends that any elicitation of testimony surrounding the internal investigation and its findings was "inadvertent." No plausible reading of the trial transcript could support such a conclusion. That KBR purposefully invoked the internal investigation and its findings and conclusion at trial does not turn on the question of whether KBR's counsel knew or did not know that Mr. Hippert had in fact read the summary report prepared as a result of the internal investigation. KBR's counsel invoked the entirety of the internal investigation, and not any specific document such as the summary finding. Having been presented with testimony that Mr. Hippert knew that KBR "made a decision based off of"

the results of the internal investigation, KBR's counsel knew that its further elicitation of testimony about that action would reveal the results and conclusions of this investigation. This was not only KBR's witness, but a long term and current KBR employee. KBR undoubtedly took pains to prepare the witness and prepare the questions counsel would ask. KBR was in full control. It could have prevented the disclosure if it wanted, but it didn't. As such, the internal investigation was clearly put at issue through KBR's own questioning on direct and simply cannot be characterized as inadvertent.

### 2. KBR Has Waived Privilege With Respect to Underlying Source Materials That Form the Basis of the Summary Report of Its Internal Investigation

In addition seeking the internal investigation summary discussed by Mr. Hippert at trial, the United States moves to compel the production of all underlying and supporting documents related to this summary. Having waived its privilege with respect to the summary conclusions of the internal investigation, KBR has also waived privilege with respect to the underlying documents that form the basis of the summary and the conclusions of the investigation. The Fifth Circuit has been clear that a party may not selectively waive portions of privileged materials and retain its privilege with respect to the entirety of such materials. "[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) (quoting *Indus. Clearinghouse, Inc.* v. *Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992)).

In the context presented here of internal investigations conducted by attorneys, courts have also been clear that disclosure of reports summarizing underlying source materials (including witness interviews) constitutes a waiver of privilege as to those underlying source materials and associated documents. *DeAngels v. Corzine*, 2015 WL 585628, *6 (S.D.N.Y., Feb. 9, 2015) ("Both attorney-client and work-product protections may be waived when a party

selectively discloses [protected] communications to an adverse government entity. In such a situation, the privilege is waived not only as to the materials provided, but also as to the underlying source materials) (internal citations omitted); *Gruss v. Zwirn*, 2013 WL 3481350, *13 (S.D.N.Y., July 10, 2014) ("Excerpts of Defendants' attorneys' work product—the interview notes and summaries—were deliberately, voluntarily, and selectively disclosed to the SEC via the PowerPoint presentations. As a result, any work product protection associated with the factual portions of the interview notes and summaries was forfeited"). The district courts' logic in these cases applies to the analogous situation here. Once KBR has waived privilege with respect to the conclusions and findings of its internal investigation by putting its conduct with respect to the investigation at issue, it has not only put at issue the document summarizing the findings of the investigation, it has also put at issue the underlying support.

A fair evaluation of KBR's conduct with respect to the investigation into Mr. Bennett's kickbacks requires an examination of underlying source materials in order to evaluate whether any conclusions or summarization of evidence in the summary report may be incorrect or unwarranted. As such, the Government deserves an opportunity to review the underlying documents that form the basis of the summary and respectfully seeks an order from the Court requiring KBR to produce them along with the summary report.

## CONCLUSION

Thus, the Government respectfully requests the court to enter an order compelling the production of all documents related to KBR's internal investigation of Mr. Bennett's receipt of gratuities and kickbacks.

        Respectfully submitted,

        BENJAMIN C. MIZER
        Principal Deputy Assistant Attorney General

        JOHN M. BALES
        United States Attorney

Dated: June 25, 2015

        MICHAEL D. GRANSTON
        JUDITH RABINOWITZ
        KELLEY C. HAUSER
        GLENN P. HARRIS
        SAMUEL J. BUFFONE
        U.S. Department of Justice
        Civil Division
        601 D St., N.W.
        Washington, DC  20004
        Phone: 202-305-4207 | Fax: 202-514-0280
        Email: glenn.p.harris@usdoj.gov

        */s/ Michael W. Lockhart*
        MICHAEL W. LOCKHART
        Assistant United States Attorney
        Texas Bar No. 12472200
        350 Magnolia Avenue, Suite 150
        Beaumont, Texas 77701-2237
        Tel: (409) 839-2538 | Fax: (409) 839-2643
        Email:  USATXE.CivECFBmt@usdoj.gov

        Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record via electronic filing on this 25th day of June, 2015.

>                             */s/ Samuel J. Buffone*
>                             SAMUEL J. BUFFONE
>                             Trial Attorney

| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

UNITED STATES OF AMERICA  §
                         §
         Plaintiff,      §
                         §
versus                   §   CIVIL ACTION NO. 1:04-CV-42
                         §
KELLOGG BROWN & ROOT, INC. §
                         §
         Defendant.      §

## ORDER

On June 25, 2015, the United States filed a Motion to Compel Production of Documents.

Good cause having been shown therefore, the United States' Motion is GRANTED.

SIGNED at Beaumont, Texas, this ___ day of June, 2015.

                                        _____
                                        MARCIA A. CRONE
                                        UNITED STATES DISTRICT JUDGE